UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYONS PARTNERSHIP, L.P. AND HIT ENTERTAINMENT, INC., | ) ) |
| Plaintiffs, | ) ) |
| | ) Docket No. 07-3322(SJ)(MDG) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| D&L AMUSEMENT & ENTERTAINMENT, INC., CHRISTA TEDESCO, ALL IN ONE ENTERTAINMENT INC., JOHN R. ALBUJA, RAZZLE KIDAZZLE INC., LINDA LIPPO, BOBBY'S WORLD PARTY CENTER INC., MICHELLE ESPOSITO, THERESA ABREU D/B/A SILLYBRATIONS, AND JULIE LOFSTAD D/B/A A CHARACTER CONNECTION, | ) ) **FIRST AMENDED COMPLAINT** ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Plaintiffs Lyons Partnership, L.P. ("Lyons") and HIT Entertainment, Inc. ("HIT")

(collectively, "Plaintiffs"), by their undersigned attorneys, as and for their First Amended

Complaint herein, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are the owners and/or exclusive United States licensees of the

intellectual property rights in and to some of the most beloved children's characters – Barney®,

Baby Bop®, and BJ®, and Bob the Builder®.  Plaintiffs bring this action to prevent Defendants

from *inter alia*, using or renting, offering to use or rent, or inducing others to use or rent cheap,

counterfeit "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes to provide children's

entertainment services, and from advertising, promoting, or marketing such services using

Plaintiffs' registered and unregistered trademarks and copyrights.  Plaintiffs do not license the

manufacture, sale, or distribution of adult-sized costumes (except under limited circumstances

described below) because of the inherent danger such costumes can pose to the characters' young fans in the hands of unscrupulous adults.

2.      Lyons is the owner of the intellectual property rights in and to the characters Barney®, Baby Bop®, and BJ® (hereinafter, each a "Barney® Character", and, collectively, the "Barney® Characters").  HIT is the exclusive United States licensee of the intellectual property rights in and to the character Bob the Builder® (hereinafter the "Bob the Builder® Character"). The aforementioned characters are collectively denominated the "Protected Characters."

3.      Plaintiffs assert the following causes of action against Defendants - infringement of Plaintiffs' registered and unregistered trademarks and trade dress in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125; false designation of origin and false descriptions and representations in commerce in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125; trademark counterfeiting in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. §§ 1114 and 1116; copyright infringement in violation of 17 U.S.C. § 501 *et seq.*; common law unfair competition under New York law; common law trademark infringement under New York law; and violation of Section 360-*l* of New York General Business Law. Plaintiffs seek damages, an accounting of each Defendant's infringing profits and impoundment and destruction of the infringing costumes under both the Lanham Act and the Copyright Act. Plaintiffs further seek preliminary and permanent injunctive relief to enjoin Defendants from continuing to infringe upon Plaintiffs' intellectual property rights.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Defendants because Defendants transact business in the State of New York and in this judicial district.  In addition, the Court has personal

jurisdiction over Defendants pursuant to New York CPLR §§ 301 and 302, because Defendants committed tortious acts within and without the State of New York and this judicial district.

5.      This Court has original subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a), as the state and federal claims derive from a common nucleus of operative facts and form part of the same case or controversy.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

### Plaintiffs

7.      Lyons is a limited partnership duly organized and existing under the laws of Texas.  Its principal place of business is in Allen, Texas.  Lyons was established as a limited partnership in April 1992, having previously been a division of DLM, Inc., a Texas corporation. When established as a limited partnership, all of the business, intellectual property and goodwill of DLM, Inc. relating to the Barney®, Baby Bop®, and BJ® children's dinosaur characters were assigned to Lyons.  Lyons is engaged in, among other things, the creation, production and distribution of books, videocassettes, television programs, and plush dolls, and has commercially exploited and licensed the Barney® Characters depicted therein, all of which products are created by Lyons for the enjoyment of preschool children.

8.      HIT is a company organized and existing under the laws of the State of Delaware with its principal office and place of business in New York, New York.  HIT, together with its United States and United Kingdom affiliate companies, is a fully integrated studio that produces and distributes worldwide television programming and home entertainment, publishing, and

other licensed merchandise depicting many of the most beloved classic children's entertainment properties, including the Barney® Characters and the Bob the Builder® Character.

**Business Entity Defendants**

9.        **Defendants D&L Amusement & Entertainment, Inc. and Christa Tedesco**

a.        **Entity**.  Defendant D&L Amusement & Entertainment, Inc. is, and at all relevant times was, a corporation organized and existing under the laws of New York with its principal place of business at 3121 Quentin Road, Brooklyn, New York 11234.  Upon information and belief, defendant D&L Amusement & Entertainment, Inc, is engaged in the businesses of purchasing, distributing, displaying, selling, renting, and/or using adult-sized counterfeit costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services.  Upon information and belief, D&L Amusement & Entertainment, Inc. transacts substantial business in this District.

b.        **Owner**.  Upon information and belief, Defendant Christa Tedesco is, and at all relevant times was, an officer, director, and/or shareholder of D&L Amusement & Entertainment, Inc. and owns, operates, and/or otherwise controls D&L Amusement & Entertainment, Inc.  Upon information and belief, Christa Tedesco: (a) is personally responsible for the daily management, operation, and financial control of D&L Amusement & Entertainment, Inc., (b) personally participated in and/or had the right and ability to supervise, direct, and control infringing activities alleged in this Complaint, and (c) has a direct financial interest in such infringing activities.  Upon information and belief, Defendant Christa Tedesco

resides in and/or transacts substantial business in this District (hereinafter, Christa Tedesco and D&L Amusement & Entertainment, Inc. will collectively be referred to as "D&L Amusement").

10.     **Defendants All in One Entertainment Inc. and John R. Albuja**

a.     **Entity**.  Defendant All in One Entertainment Inc. is, and at all relevant times was, a corporation organized and existing under the laws of New York with its principal place of business at 8816 Jamaica Avenue, Jamaica, New York 11421.  Upon information and belief, Defendant All in One Entertainment Inc. is engaged in the businesses of purchasing, distributing, displaying, selling, renting, and/or using adult-sized counterfeit costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; promoting, marketing, and/or otherwise advertising such services. Upon information and belief, All in One Entertainment Inc. transacts substantial business in this District.

b.     **Owner**.  Upon information and belief, Defendant John R. Albuja is, and at all relevant times was, an officer, director, and/or shareholder of All in One Entertainment Inc. and owns, operates, and/or otherwise controls All in One Entertainment Inc.  Upon information and belief, John R. Albuja: (a) is personally responsible for the daily management, operation, and financial control of All in One Entertainment Inc., (b) personally participated in and/or had the right and ability to supervise, direct, and control infringing activities alleged in this Complaint, and (c) has a direct financial interest in such infringing activities.  Upon information and belief, Defendant John R. Albuja resides in and/or transacts substantial business in this District (hereinafter, John R. Albuja and All in One Entertainment Inc. will collectively be referred to as "All in One").

11. **Defendants Razzle Kidazzle Inc. and Linda Lippo**

a. **Entity**. Defendant Razzle Kidazzle Inc. is, and at all relevant times was, a corporation organized and existing under the laws of New York with its principal place of business at 131 Union Street, Brooklyn, New York 11231. Upon information and belief, defendant Razzle Kidazzle Inc. is engaged in the businesses of purchasing, distributing, displaying, selling, renting, and/or using adult-sized counterfeit costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services. Upon information and belief, Razzle Kidazzle Inc. transacts substantial business in this District.

b. **Owner**. Upon information and belief, Defendant Linda Lippo is, and at all relevant times was, an officer, director, and/or shareholder of Razzle Kidazzle Inc. and owns, operates, and/or otherwise controls Razzle Kidazzle Inc. Upon information and belief, Linda Lippo: (a) is personally responsible for the daily management, operation, and financial control of Razzle Kidazzle Inc., (b) personally participated in and/or had the right and ability to supervise, direct, and control infringing activities alleged in this Complaint, and (c) has a direct financial interest in such infringing activities. Upon information and belief, Defendant Linda Lippo resides in and/or transacts substantial business in this District (hereinafter, Linda Lippo and Razzle Kidazzle Inc. will collectively be referred to as "Razzle Kidazzle").

12. **Defendants Bobby's World Party Center Inc. and Michelle Esposito**

a. **Entity**. Defendant Bobby's World Party Center Inc. is, and at all relevant times was, a corporation organized and existing under the laws of New York with its principal

place of business at 8424 13th Avenue, Brooklyn, New York 11228.  Upon information and belief, defendant Bobby's World Party Center Inc. is engaged in the businesses of purchasing, distributing, displaying, selling, renting, and/or using adult-sized counterfeit costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services.  Upon information and belief, Bobby's World Party Center Inc. transacts substantial business in this District.

    b. **Owner**.  Upon information and belief, Defendant Michelle Esposito is, and at all relevant times was, an officer, director, and/or shareholder of Bobby's World Party Center Inc. and owns, operates, and/or otherwise controls Bobby's World Party Center Inc. Upon information and belief, Michelle Esposito: (a) is personally responsible for the daily management, operation, and financial control of Bobby's World Party Center Inc., (b) personally participated in and/or had the right and ability to supervise, direct, and control the infringing activities alleged in this Complaint, and (c) has a direct financial interest in such infringing activities.  Upon information and belief, Defendant Michelle Esposito resides in and/or transacts substantial business in this District (hereinafter, Michelle Esposito and Bobby's World Party Center Inc. will collectively be referred to as "Bobby's World").

<u>**Sole Proprietorship Defendants**</u>

  13. **Defendant Theresa Abreu d/b/a Sillybrations**

    a. Upon information and belief, Defendant Theresa Abreu ("Abreu") is an individual doing business as Sillybrations, with a principal place of business at 23 Wyoming Street, Commack, New York 11725.  Upon information and belief, Abreu is, and at all relevant

times was, engaged in the businesses of purchasing, distributing, displaying, selling, renting, and/or using adult-sized counterfeit costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services.

        14.    **Defendant Julie Lofstad d/b/a A Character Connection**

        a.    Upon information and belief, Defendant Julie Lofstad ("Lofstad") is an individual doing business as A Character Connection, with a principal place of business at 177 Springfield Road, Hampton Bays, New York 11946.  Upon information and belief, Lofstad is, and at all relevant times was, engaged in the businesses of purchasing, distributing, displaying, selling, renting, and/or using adult-sized counterfeit costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services.

**FACTS**

A.    **History of and Rights in the Barney® Characters.**

        15.    Lyons is the creator and owner of the famous Barney® children's characters. Lyons owns numerous existing federal trademark and service mark registrations.  Lyons is also the owner of numerous existing federal copyrights.

        16.    Barney® is a purple, highly stylized "Tyrannosaurus Rex"-type dinosaur with a swath of green down his chest and stomach.  Barney® is further recognized by his friendly mien, "mitten-shaped" hands, straight line of "teeth," and rounded body parts.  This appearance and

8

trade dress of Barney® is distinctive and results from the combination of a number of arbitrary elements, including, but not limited to, the proportion of the character's oversized, rounded head, the shape of his tail, the combination and configuration of colors, the representation of teeth, the placement of eyes, and the use of yellow "toe" balls on his feet.  Barney® is a positive, wholesome character who encourages children to use their imaginations and to solve problems. Barney® is brought to life by an actor (in a specially-designed costume) as a six foot tall helpmate and friend through the imagination of children.  A true and correct picture of Barney® is attached hereto as Exhibit A.  The character's appearance is protected by a federal service mark registration for entertainment services.  A true and complete copy of this registration is attached hereto as Exhibit B.

17.     The first videotape featuring Barney® was "*The Backyard Show*."  Since 1988, Lyons has produced and sold 49 original Barney® videotapes for home viewing.  A true and complete copy of the federal copyright registration protecting "*The Backyard Show*" is attached hereto as Exhibit C.

18.      On April 6, 1992, the Public Broadcasting Service ("PBS") began airing a new series, "Barney & Friends™" (the "Barney® Series"), featuring the Barney® Character.  More than 228 episodes of the Series have been produced by Lyons.

19.     In 1991, DLM, Inc. created Baby Bop®, another highly-stylized dinosaur character.  The appearance and trade dress of Baby Bop® is distinctive, and the character appears as a green, highly stylized "Triceratops"-type dinosaur with a purple chest and stomach, black eyelashes, pink dancing slippers, and a pink bow in her feathery hair.  A true and correct picture of Baby Bop® is attached hereto as Exhibit D.  The character's appearance is protected by a federal service mark registration for entertainment services.  A true and complete copy of this

registration is attached hereto as Exhibit E.  Baby Bop® made her first appearance in a video

entitled "*Barney in Concert*" and is featured with Barney® in videos and elsewhere.  A true and

complete copy of the federal copyright registration protecting "*Barney in Concert*" is attached

hereto as Exhibit F.

      20.    A third dinosaur character, BJ®, was created by Lyons 1993.  The appearance

and trade dress of BJ® is distinctive and the character appears as a yellow, highly stylized

"Stegosaurus"-type dinosaur, with a green chest and stomach, a smattering of freckles across his

nose, red high top sneakers, and a red baseball cap, often turned askew.  A true and correct

picture of BJ® is attached hereto as Exhibit G.  The character's appearance is protected by a

federal service mark registration for Entertainment Services.  BJ®, portraying Baby Bop®'s older

brother, made his first appearance on the Barney® Series in an episode entitled "*Look at Me, I'm

3.*"  A true and complete copy of this registration is attached hereto as Exhibit H.  A true and

complete copy of the Federal copyright registration protecting "*Look at Me, I'm 3*" is attached

hereto as Exhibit I.

      21.    Lyons also manufactures, distributes, and sells plush dolls bearing the unique

Barney®, Baby Bop®, and BJ® images and trade dress.  Photographs of the Barney® Characters

plush dolls are attached hereto as Exhibit J.  The plush toys are the subject of federal copyright

registrations that are attached hereto as Exhibit K.  In addition, the configuration of the plush

toys is protected by federal trademark registration Nos. 1,807,708 (Barney®), 1,918,112 (Baby

Bop®); and 1,937,783 (BJ®), copies of such registrations are attached hereto as Exhibit L.

      22.    Lyons further owns rights in approximately 294 books featuring the Barney®

Characters, which were created, published, and sold either through licensing agreements with

other companies.  In addition, in August 1994, Lyons launched the Barney Magazine for children, now published six times a year.

23.     The appearances of Lyons' Barney® Characters are inherently distinctive and serves to identify Lyons as the source of goods and services bearing the images of the Barney® Characters.  As stated above, Lyons has obtained federal trademark and service mark registrations for the configuration of costumes for the Barney® Characters, for the configuration of plush dolls depicting such characters, and for the appearance of the character for entertainment services.  All of these registrations were granted without the United States Patent & Trademark Office requiring proof of secondary meaning, evidencing the inherently distinctive nature of the marks.  A true and correct list of those registered trademarks and service marks is attached hereto as Exhibit M.

24.     Alternatively, the Barney® Characters have also acquired distinctiveness through widespread promotion and use.  The Barney® Characters enjoy tremendous success, widespread visibility and goodwill throughout the United States and abroad.  The Barney® Characters' smiling appearances and friendly miens have become instantly recognizable to, and loved by, millions of preschool children and their parents.  The purchasing public has come to associate the Barney® Characters with Lyons as the source of products and services.

25.     Evidence of the existence of such secondary meaning includes, but is not limited to:

     a.     the wide recognition by the media of the uniqueness, popularity, and excellence of the Barney® Characters.  The Dallas Morning News, on May 9, 2004, reported that "a decade or so after it burst onto the television scene [the Series] continues to offer a wholesomely appropriate, educational television for pre-schoolers;" the August 1994 issue of Child Magazine lists Barney® as "one of the most influential personalities in young kids' lives;"

b.      the numerous positive reviews, nominations, and awards received by the Barney® Series and by the videotapes as quality educational programming for preschoolers.  The Series won a Daytime Emmy Award in 2001 and was recently nominated again for this honor; Barney® Characters videotapes have received the Parents Choice Award, the Oppenheim Toy Portfolio Gold Seal Award, the California Children's Video Award, and the Film Advisory Board Award of Excellence and was recently the recipient of Best Products Call, Home Video/DVD category at the 2006 iParenting Media Awards;

c.      the Barney® Series has been one of the top-rated children's television shows on public television since its debut in April 1992.  In February 2007, the Barney® Series had an average of 1,200,000 viewers per week on PBS.  The Barney® Series also appears daily on the PBS Kids Sprout[SM] channel, which is available to more than 30 million homes in the United States;

d.      more than one million children who are or have been members of the Barney® Fan Club, and the more than 87,000 fans who visit the Barney® website weekly;

e.      more than 80 million Barney® videos, more than 100 million Barney® books, 30 million plush toys, and six million audiotapes and CDs that have been sold;

f.      books embodying the Barney® Character have appeared on Publishers Weekly "Best Sellers" list more than 140 times in six years.  Six titles have sold more than two million copies each.  Eleven titles have sold more than a million copies each.  Two Barney® books were named as "outstanding" in the 1997 fall/winter issue of Reviews from the Parents Council.  Other Barney® books have been awarded the Children's Choice Award, the Parent's Guide to Media Award, the National Parenting Publication Award and Baby Magazine's Best Books for Children award; and

g.      the first two Barney® record albums were recognized as triple platinum (awarded for sales of three million units) and platinum (awarded for sales of one million units), respectively, by the Recording Industry Association of America the first two Barney® Characters' song collections on compact disc and cassette tape have been certified double platinum and gold, respectively, by the Recording Industry Association of America; and the character has been named three times by Billboard Magazine as "Children's Entertainer of the Year" (1996, 1997, and 1998).  In December 1997, the Barney® holiday album, "*Happy Holidays Love, Barney*®," was number two on Billboard's Top Kid Audio chart, and even appeared in Billboard's Top 200 chart, which includes all categories.

26.     Preschool children also have increasingly identified the Barney® Characters with live performances and appearances.  The Barney® Characters appear in a live stage show 365 days a year at a major Barney® attraction at Universal Studios theme park in Orlando, Florida, which opened in July 1995.  On information and belief, more than eight million people have seen this authorized show since its debut.

27.     During the period of September 1996 through December 1998, a major stage show tour featuring the Barney® Characters traveled throughout the United States, Canada, Mexico, and the United Kingdom.  Nearly two million people attended the show, with performances sold out on numerous occasions.  A second major stage show commenced in September 1999, and included approximately 200 shows in 35 cities in its eight-month tour.  Approximately one million people attended the second stage show during its tour.  A third major stage show commenced in January 2003, and included approximately 370 shows in 94 cities.  More than 890,000 people have attended this third stage show.  The fourth major stage show, the Twentieth Anniversary Tour, is scheduled for Fall 2007 and Spring 2008, and will feature Barney® in 20 cities across the United States.

**B.      History of and Rights in the Bob the Builder® Character.**

28.     By way of agreement between HIT Entertainment Limited and Keith Chapman, creator of the Bob the Builder® Character, HIT Entertainment Limited is the owner of all United States trademarks related to the character.  Further, HIT Entertainment Limited and Keith Chapman are joint owners of the copyright in the Bob the Builder® character.  HIT Entertainment Limited has licensed to HIT the sole and exclusive right to exploit and distribute the Bob the Builder® Character and property in the United States.

29.     In 1997, HIT Entertainment Limited, through its state-of-the-art, stop-frame animation studio, HOT Animation Limited ("HOT"), began developing a stop-frame animated children's television series based upon the Bob the Builder® Character (the "BTB Series"). More than 136 thirty-minute episodes have been produced since then, and production of new episodes continues.  Likewise, numerous videotapes and DVDs featuring the Bob the Builder® Character have been produced for HIT Entertainment Limited by HOT.

30.     In 1998, HIT Entertainment Limited licensed the rights to broadcast the BTB Series to BBC TV.  Bob the Builder® made his broadcast debut in the United Kingdom in April 1998 on the BBC, and the BTB Series has aired continuously throughout the United States since 2001.

31.     Furthermore, HIT and its licensees have continuously created and published books and other publications featuring the Bob the Builder® Character.  To date, the Bob the Builder® Character is featured in 139 books.

32.     The appearance and trade dress of the Bob the Builder® Character is distinctive and is identified by a combination of arbitrary and distinct visual elements which make up his overall appearance, design, and trade dress, including, but not limited to, his bright yellow hard hat, his orange and red checkered shirt, his blue overalls, work boots, and his tool belt decked out with lots of tools.  Bob the Builder® is a spirited and positive character, focusing on solving problems with teamwork and a "can do" attitude.  A true and correct picture of the Bob the Builder® Character is attached hereto as Exhibit N.

33.     As a result of the immense popularity and exposure of the BTB Series, and the videotapes, DVDs, and books based upon the character, the Bob the Builder® Character is

instantly recognized throughout the United States and abroad by pre-school children and their parents.

34.     HIT has obtained copyright registrations for the BTB Series episodes and for related videotapes, DVDs, and books.  A true and correct list of those copyright registrations is attached hereto as Exhibit O.

35.     The appearance of the Bob the Builder® Character is inherently distinctive and serves to identify HIT as the source of goods and services bearing the character's image.  HIT has obtained registrations of several federal trademarks and service marks related to the BTB Series and to the Bob the Builder® Character, including a service mark registration protecting the character's appearance for entertainment services.  A true and correct list of those registered trademarks and service marks is attached hereto as Exhibits P and Q.

36.     Alternatively, the Bob the Builder® Character has also acquired distinctiveness through widespread promotion and use.  The character enjoys tremendous success, widespread visibility and goodwill throughout the United States and abroad.  The purchasing public has come to associate the Bob the Builder® Character with HIT as the source of products and services.

37.     Evidence of the existence of such secondary meaning includes, but is not limited to:

> a.     Media recognition of the uniqueness, popularity and excellence of the BTB Series, including the 2003 Children's Animation Award at the SPROCKETS International Film Festival, the 2003 Children's Award for Best Animation from the British Academy of Film and Television Arts for the first full length Bob the Builder® feature, "*A Christmas to Remember*" and the 2007 Children's Best Programme Award from the Home Entertainment Week Awards for the Bob the Builder ® feature, "*Built to be Wild*";

b.  positive reviews, nominations, and awards received by the BTB Series and by the videotapes and DVDs as quality educational programming for preschoolers, including receipt of the 2006 iParenting Media Award and receipt of the 2006 Aurora Award for Platinum Best of Show;

c.  continued high demand for goods and programs embodying the Bob the Builder® character;

d.  the fact that the BTB Series launched in the United States on the Nick Jr. Channel in January 2001, and was the highest-rated premiere ever on Nick Jr.;

e.  In February 2007, the BTB Series had an average of 1,910,000 viewers per week on PBS. The BTB Series also appears daily on the PBS Kids Sprout$^{SM}$ channel, which is available to thirty million homes in the United States;

f.  the more than 130 countries across five continents in which the BTB Series airs and the attendant global following;

g.  the launch of a new BTB Series in the United States on PBS in 2005, called "*Bob the Builder – Project: Build It*";

h.  the sale of more than 11 million videos and DVD's in the United States and Canada, many of which have achieved platinum-selling status, and continued demand for additional video and DVD titles;

i.  the sale of more than 17 million Bob the Builder® books in the U.S. and Canada;

j.  the toys and merchandise related to the BTB Series featured in thousands of toy stores across the country;

k.  the immense popularity of the Bob the Builder® interactive website (www.bobthebuilder.com), which launched in 1999 and which is accessed by hundreds of thousands of American visitors each month;

l.  the fact that the Series' theme song, "*Can We Fix It? Yes We Can!*", released as a single in December 2000, was No. 1 on the United Kingdom singles chart for three weeks and named the best-selling single of 2000, selling more than one million copies; and

m.  the success of a major stage show tour featuring Bob the Builder®, called "*Bob the Builder® LIVE!*" which launched in February 2002 and toured throughout the United Kingdom. More than 100,000 people attended the show, with numerous sold out performances. The show was so successful that it was brought to the United States and Canada, where between March

16

2003 and May 2004, it toured 48 cities, playing 175 shows to audiences totaling more than 371,000 persons.

**C.      Protection of the Characters by Plaintiffs**

38.      The tremendous success of the Barney® Series and the BTB Series has brought Plaintiffs many prospective licensing suitors from the business world and toy industry.  Plaintiffs have, with careful circumspection, granted licenses for the manufacture and sale of numerous products featuring their characters' trademarks.

39.      Plaintiffs have built their "brands," establishing tremendous equity in the intellectual properties related to their characters, by carefully circumscribing and monitoring all related materials and activities to ensure that they are consistent with each character's image. The characters' images are not licensed for use in connection with any product inappropriate for their young fans.  Stringent safety, quality control, and approval standards are imposed upon all licensees of Protected Characters merchandise.

40.      Lyons also has not licensed the manufacture (other than for its own use), distribution, sale, or rental of any costumes for adults that depict the Barney® Characters.  Lyons has limited the granting of licenses to provide theatrical performances or appearances by costumed characters that look like the Barney® Characters to a select group of third parties (for example, Universal Studios Florida, and only as a permanent attraction in the Orlando theme park).  Even at Universal Studios Florida, the Barney® Characters' appearances are limited to scripted stage performances, and Lyons does not permit the Barney® Characters to be used as "walk-around" characters.

41.      Further, Lyons carefully choreographs personal appearances by the Barney® Characters because it considers the children's experience of the Barney® Characters to be one of utmost trust and confidence.  The characters appear only where children are present; it is the

children's imaginations that bring the characters to life.  No child is ever allowed to see the characters unless they are fully and completely costumed.  The Barney® Characters are never seen eating or drinking.  The Barney® Characters and all those who travel with them comport themselves in a courteous and appropriate fashion.  And Barney® rarely visits any town without making a private visit to the local children's hospital.

42.     HIT similarly has not licensed the manufacture (other than for its own use), distribution, sale, or rental of any costumes for adults depicting the Bob the Builder® Character.  Moreover, personal appearances by Bob the Builder® are carefully choreographed by HIT.

43.     The primary reason for the decision not to license adult costumes for commercial use is to preserve and carefully monitor the exposure of the Barney® Characters and the Bob the Builder® Character so that very young children will not be distressed or upset by the unpredictable (and potentially dangerous) conduct of unauthorized impersonators in knock-off costumes trading on the goodwill of the Bob the Builder® and the Barney® Characters.

44.     In addition, Plaintiffs are concerned that the presentations made by such unauthorized performers would not meet the Protected Characters' image standards, appropriate to such enduring classic characters.  For example, a real Barney® costume costs approximately $20,000 to manufacture and weighs about 40 pounds.  Significant training is required for the performer wearing the costume to learn how to do the runs, spins, leaps and dances characteristic of Barney®.  Similarly, a real Bob the Builder® costume costs more than $10,000 to manufacture, and significant training is required for the performer wearing the costume to learn how to do the motions and actions characteristic of the Bob the Builder® Character.

45.     Plaintiffs have entered into written license agreements with third parties, authorizing the use of their trademarks and copyrighted characters on dozens of products,

including stickers, plush dolls, lunch boxes, coloring books, knapsacks, clothing, and toys for pre-school-aged children.  Under each such agreement, Plaintiffs have the right to control the nature and quality of goods on which their marks and characters are used.

46.     Licensees that manufacture products based upon the Protected Characters are required to follow strict guidelines regarding the quality of such merchandise.  These guidelines reflect Plaintiffs' concerns about maintaining and advancing the goodwill and business reputation that they have built in products depicting their characters.

47.     Moreover, Plaintiffs all require their licensees to display one or more trademark notices on each product to identify it as a legitimate product.  Lyons further requires each authorized Lyons product to display a Barney® Characters tag.

### E.     Defendants' Unauthorized Use of Plaintiffs' Protected Characters and Marks

48.     Unfortunately, the popularity and success of these carefully protected properties has created a huge market for cheap knock-offs, illicit and counterfeit goods utilizing the names, likenesses, trademarks, and copyrights of characters owned and licensed by Plaintiffs.  Plaintiffs receive frequent reports of unauthorized goods and services, from novelty key chains and third-rate dolls, to "Barney", "Baby Bop", "BJ", and "Bob the Builder" impersonators who provide children's entertainment services and endorse products and businesses.

49.     Plaintiffs have taken vigorous steps to enforce their intellectual property rights, generally through the procurement of voluntary cessation of infringing activities.  Due to the pernicious nature of unauthorized personal appearances by "Barney", "Baby Bop", "BJ", and "Bob the Builder" impersonators, Plaintiffs have recently focused considerable effort on entertainment and party service businesses offering counterfeit "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes.

50.     As part of Plaintiffs' enforcement efforts, Plaintiffs issued demand letters requiring entertainment and party service companies to cease their infringing activities, to surrender their knock-off costumes, and to identify, in writing, the source of their costumes.

51.     Moreover, Lyons, for its part, filed more than 90 enforcement actions in the past nine years in more than 20 states against numerous defendants alleged to have infringed Lyons' rights in the Barney® Characters.  In each such action, Lyons alleged that defendants had made commercial use of full-size, adult costumes bearing the likeness of the Barney® Characters. Lyons has filed suit against both manufacturers of infringing costumes, as well as downstream users who re-sold the costumes, rented them, and/or used them to provide unauthorized performances.  Nearly all of these actions have been resolved pursuant to settlement, the terms of which typically include stipulated permanent injunctions against further such activity.

52.     As part of its enforcement efforts, Plaintiffs became aware of numerous individuals and entities engaged in the business of purchasing, distributing, displaying, selling, renting, offering to rent, using, and/or offering to use (and inducing others to do the foregoing) adult-sized, counterfeit costumes depicting Plaintiffs' Protected Characters in conjunction with providing children's entertainment services.

53.     Beginning in April 2006, Plaintiffs issued settlement demand packages to confirmed infringing parties, including the Defendants herein, to provide them with an opportunity to settle with Plaintiffs on reasonable terms without litigation.  These packages contained a draft of this Complaint, and a letter demanding that Defendants cease and desist their infringing conduct and compensate Plaintiffs for their infringements to date.  To date, Defendants herein have failed to do so.

54.     In order to settle with Plaintiffs, an infringing party was required to: (1) surrender all infringing costumes to Plaintiffs for destruction, (2) complete a questionnaire detailing *inter alia*, how often each infringing costume was used and the amounts charged to provide services using each infringing costume, (3) pay a reasonable settlement amount commensurate with the nature and extent of its infringing activities, and (4) agree to a permanent injunction.  The parties would then provide each other with mutual releases.

55.     The Defendants named in this action engaged in infringing activities which may include purchasing, distributing, displaying, selling, renting, and/or using adult-sized, counterfeit character costumes which bear the likenesses and images of the Protected Characters for commercial purposes and/or inducing others to engage in such activities.  Moreover, upon information and belief, Defendants advertise, promote, and/or otherwise market to the public that they provide such services.

56.     **D&L Amusement.**  Upon information and belief, D&L Amusement was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized counterfeit costumes bearing the likenesses of Barney®, Baby Bop®, and Bob the Builder®.  Plaintiffs' investigation of D&L Amusement's infringing activities revealed that on June 5, 7, and 9, 2006, D&L Amusement offered to provide children's entertainment services using knock-off "Barney", "Baby Bop", and "Bob the Builder" costumes.  On each occasion, D&L Amusement promoted, advertised, and/or offered its infringing services using one or more of Plaintiffs' marks.  Accordingly, Christa Tedesco and D&L Amusement & Entertainment, Inc. are jointly and severally liable for copyright and trademark infringement.

57. **All in One**.  Upon information and belief, All in One was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized counterfeit costumes bearing the likeness of Barney® and Bob the Builder®. Plaintiffs' investigation of defendants' infringing activities revealed that on August 11, 2005, All in One offered to provide children's entertainment services using knock-off "Barney" and "Bob the Builder" costumes.  Upon information and belief, All in One promoted, advertised, and/or offered its infringing services using one or more of Plaintiffs' marks.  Accordingly, John R. Albuja and All in One Entertainment Inc. are jointly and severally liable for copyright and trademark infringement.

58. **Razzle Kidazzle Inc.**  Upon information and belief, Razzle Kidazzle was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized counterfeit costumes bearing the likeness of Barney® and Bob the Builder®.  Plaintiffs' investigation of defendants' infringing activities revealed that on May 31, 2006, Razzle Kidazzle offered to provide children's entertainment services using knock-off "Barney" and "Bob the Builder" costumes.  Plaintiffs' investigation further revealed that on June 9, 2006, Razzle Kidazzle also offered to provide children's entertainment services using knock-off "Barney" costumes.  Upon information and belief, Razzle Kidazzle promoted, advertised, and/or offered its infringing services using one or more of Plaintiffs' marks.  Accordingly, Linda Lippo and Razzle Kidazzle Inc. are jointly and severally liable for copyright and trademark infringement.

59.   **Bobby's World.**   Upon information and belief, Bobby's World was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized counterfeit costumes bearing the likeness of Barney® and Bob the Builder®. Plaintiffs' investigation of defendants' infringing activities revealed that on August 11, 2005, Bobby's World offered to provide children's entertainment services using a knock-off "Barney" and "Bob the Builder" costumes.   Upon information and belief, Bobby's World promoted, advertised, and/or offered its infringing services using one or more of Plaintiffs' marks.   Accordingly, Michelle Esposito and Bobby's World Party Center Inc. are jointly and severally liable for copyright and trademark infringement.

60.   **Abreu.**   Upon information and belief, Abreu was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using an adult-sized counterfeit costume bearing the likeness of Barney®.   Plaintiffs' investigation of defendant's infringing activities revealed that on June 14, 2006, Abreu offered to provide children's entertainment services using a knock-off "Barney" costume.   Abreu promoted, advertised, and/or offered her infringing services using one or more of Plaintiffs' marks.

61.   **Lofstad.**   Upon information and belief, Lofstad was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using an adult-sized counterfeit costume bearing the likeness of Barney®.   Plaintiffs' investigation of defendant's infringing activities revealed that on August 5 and 18, 2005 Lofstad offered to provide children's entertainment services using a knock-off "Barney" costume.   Upon

information and belief, Lofstad advertised and/or offered her infringing services using one or more of Plaintiffs' marks.

62.     Defendants are not authorized licensees or contractors of any of Plaintiffs' Protected Characters.

63.     The overall appearance of Defendants' knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" character costumes is substantially similar to the genuine Protected Characters.

64.     Defendants'  knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" character costumes are designed and used for live appearances at children's parties and other events and are intended to suggest that the genuine Protected Characters are appearing.

65.     Defendants' knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" character costumes are passed off as Plaintiffs' genuine characters with the intent to deceive and defraud the public and to appropriate Plaintiffs' exclusive rights in and to the Protected Characters and related intellectual property.

66.     Defendants' conduct is likely to cause confusion, cause mistake, or to deceive consumers, as to the source and origin of defendants' counterfeit costumes, as well as the sponsorship of live appearances of the Defendants' knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes.

67.     Defendants' conduct will have a substantial, adverse impact on Plaintiffs' existing and projected interstate business of marketing products and services identified by the Protected Characters and related intellectual property and the resulting goodwill.

68.     Based upon Plaintiffs' investigations, it is clear that Defendants regularly provide to the public children's entertainment services utilizing knock-off costumes, and each receives significant revenue from such services.

69.     Plaintiffs have suffered, and unless such infringing activities are enjoined, Plaintiffs will continue to suffer irreparable harm.

70.     For all of the foregoing reasons, Plaintiffs respectfully request that Defendants be enjoined from using knock-off  "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes and from otherwise infringing upon Plaintiffs' intellectual property rights in the Protected Characters.

## COUNT I
### (Infringement of Trademarks, Service Marks & Trade Dress - Lanham Act, §§ 32 and 43)

71.     Plaintiffs repeat each allegation contained in paragraphs 1 through 70 of this Complaint.

72.     Lyons is the owner of the federal trademark and service mark registrations relating to the Barney® Characters, a list of which is incorporated by reference and attached hereto.  See Exhibit M.  These registrations were duly and lawfully issued by the United States Patent and Trademark Office and remain in full force and effect.

73.     HIT is the exclusive United States licensee with respect to federal trademark and service mark registrations relating to the Bob the Builder® Character, a list of which is incorporated by reference and attached hereto.  See Exhibits P and Q.  These registrations were duly and lawfully issued by the United States Patent and Trademark Office and remain in full force and effect.

74.     Defendants have intentionally and knowingly copied Plaintiffs' distinctive trademarks and trade dress in the Protected Characters by the design, manufacture, sale, offering

to sell, distribution, and/or offering to distribute adult knock-off costumes similar or identical in appearance to the Protected Characters.

75.    Upon information and belief, Defendants' knock-off "Barney" costumes look like a highly stylized purple Tyrannosaurus Rex-type dinosaur, with green chest and stomach.

76.    Upon information and belief, Defendants' knock-off "Baby Bop" costumes look like a highly stylized green Triceratops-type dinosaur, with purple chest and stomach, black eyelashes, pink dancing slippers, and a pink bow in her hair.

77.    Upon information and belief, Defendants' knock-off "BJ" costumes look like a highly stylized yellow Stegosaurus-type dinosaur, with a green chest and stomach, a smattering of freckles across his nose, red high top sneakers, and a red baseball cap.

78.    Upon information and belief, Defendants' knock-off "Bob the Builder" costumes look like a construction worker, with a smiling face, blue work overalls, a yellow shirt, a utility belt, work boots, and a yellow construction hat.

79.    Upon information and belief, the overall appearances of Defendants' knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes are substantially similar or virtually identical to the Protected Characters.

80.    While Plaintiffs do not license the manufacture or distribution of any Barney®, Baby Bop®, BJ®, and Bob the Builder® adult-sized character costumes (except as stated above), the Protected Characters regularly appear in live theatrical shows sponsored by Plaintiffs and/or make select personal appearances selected by Plaintiffs before thousands of children.

81.    Defendants' provide their knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes and/or induce others to provide such costumes for use in live appearances

targeting children.  Defendants' infringing products are thus presented to children through the same or similar channels in which legitimate Protected Characters are presented.

82.    Defendants' advertising, marketing, promotion, display, and/or distribution of knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" character costumes target preschool children who are the biggest fans and customers of the Protected Characters and related products.

83.    Defendants, without permission, license, or authority from Plaintiffs, advertised, promoted, marketed, sold, offered to sell, rented, offered to rent, and/or distributed (and/or induced others to engage in such activities) children's entertainment services using the knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes, in violation of the rights of Plaintiffs, within this District.

84.    Prior to the acts of Defendants complained of herein:

a.    Plaintiffs exploited their Protected Characters via the production and sale and/or licensing of videotapes, DVDs, books, and other products, under their various trademarks and copyrights, which have enjoyed a deserved favorable reputation of great value;

b.    Plaintiffs expended and continue to spend large sums of money to build, maintain, and extend their reputations;

c.    Plaintiffs engaged and continue to engage in interstate activities designed to promote the products sold and the goodwill associated with their registered and unregistered trademarks, service marks, and trade dress throughout the United States;

d.    Plaintiffs engaged in, and continue to engage in, interstate activities designed to promote the business and goodwill identified by each of the registered and unregistered trademarks, service marks, and trade dress in interstate commerce and to expand the use and reputation of the trademarks, service marks, trade dress, and property throughout the United States;

e.    the registered and unregistered trademarks, service marks, and trade dress have been and continue to be known in numerous states, including New

York, as marks identifying and distinguishing the products and services of Plaintiffs, respectively; and

f. the registered and unregistered trademarks, service marks, and trade dress relating to the Protected Characters are inherently distinctive, and have been and continue to be known throughout the United States, including New York, as identifying and distinguishing the business of Plaintiffs, respectively.

85. Defendants' conduct is likely to cause confusion, cause mistake, or to deceive consumers as to the source, origin and sponsorship of the live appearances of the knock-off "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes.

86. Upon information and belief, Defendants' activities have caused actual confusion with consumers as to the source and origin of such costumes.

87. The acts of Defendants will nullify Plaintiffs' right to the exclusive use of their trademarks, service marks and trade dress, free from infringement.

88. Defendants' activities have had and will continue to have a substantial, adverse effect on Plaintiffs' existing and projected future interstate business of marketing products and services identified by the trademarks, service marks, and trade dress, and on the goodwill of Plaintiffs' business connected with the use of, and symbolized by, trademarks, service marks, and trade dress.

89. Defendants' activities and conduct constitute infringement of each of the Protected Characters' related trademarks and trade dress, in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

90. In addition, upon information and belief, Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

91. Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Defendants have profited thereby and unless their conduct is enjoined, Plaintiffs and

their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.  Accordingly, Plaintiffs seek preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

92.     Defendants have intentionally and knowingly used the Protected Characters-related trade dress, service marks, and trademarks; accordingly, Plaintiffs are entitled to a judgment of three times their damages, or Defendants' profits, whichever is greater, together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b).

<u>**COUNT II**</u>
**(False Designation of Origin/False Description – Lanham Act, §43(a))**

93.     Plaintiffs repeat each allegation contained in paragraphs 1 through 92 of this Complaint.

94.     Lyons is the owner of the intellectual property rights associated with the Barney® Characters, and HIT is the exclusive United States licensees for the intellectual property associated with the Bob the Builder® Character.  All of the Protected Characters are enjoyed by children and their parents throughout the United States.

95.     The appearances of the Protected Characters constitute inherently distinctive trade dress.

96.     Plaintiffs have used the Protected Characters and their distinctive trade dress to provide a secure, friendly, loving feeling for pre-school children who have come to believe in the Protected Characters as their extraordinary friends.

97.     Plaintiffs have manufactured, marketed, and sold videotapes, DVDs, and books and a variety of other products featuring the Protected Characters, and have realized substantial income from such sales.

98.     The Protected Characters and their trade dress are recognized as distinctive and have developed and now possess secondary trademark meaning to the viewers of the Protected Characters' television series, videotapes and DVDs, and the authorized personal and/or theatrical appearances, and to the purchasers of featuring the Protected Characters products.

99.     The acts of Defendants constitute false designations of origin, false descriptions and representations, and infringement of the trade dress in and to the Protected Characters. Specifically, Defendants have used, in connection with the provision of, or offering to provide knock-off costumes depicting the Protected Characters, words, terms, names, symbols, and devices, and combinations thereof, and false or misleading descriptions and representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

100.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct.  Defendants have profited thereby and unless enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

101.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

## <u>COUNT III</u>
### (Trademark Counterfeiting – Lanham Act § 1114(1)(a), 1116(d)(1))

102.    Plaintiffs repeat each allegation contained in paragraphs 1 through 101 of this Complaint.

103.    Plaintiffs are the owners and/or exclusive licensees of United States trademark and service mark registrations in the names and trade dress of the Barney®, Baby Bop®, and BJ®, and Bob the Builder® characters for entertainment services.  These trademarks are registered on the Principal Register of the United States Patent and Trademark Office.

104.    Defendants have used or rented, offered to use or rent, or induced others to use or rent cheap, knock-off and counterfeit "Barney", "Baby Bop", "BJ", and "Bob the Builder" costumes to provide entertainment services, and have advertised, promoted or marketed such services using Plaintiffs' registered trade dress, trademarks and service marks.

105.    Defendants' use of the trademarks, service marks and trade dress of Plaintiffs' Protected Characters creates the immediate commercial impression that the costumes Defendants offer are associated with and/or emanate from Plaintiffs.  Defendants' offer to provide entertainment services using Plaintiffs' trademarks, service marks and trade dress constitutes use of counterfeit marks in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. § 1114(1)(a) and § 1116(d)(1), and is intentionally and willfully designed to deceive, and upon information and belief, has deceived, the public.

106.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct.  Accordingly, Plaintiffs are entitled to recover either statutory damages or actual damages and infringing profits, pursuant to 15 U.S.C. § 1117(c).

107.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

## COUNT IV
### (Unfair Competition – Lanham Act, § 43(a)(1)(B))

108.    Plaintiffs repeat each allegation contained in paragraphs 1 through 107 of this Complaint.

109.    Defendants' conduct constitutes an attempt to pass off and palm off their counterfeit products and services as the products and services of Plaintiffs and their licensees with the intent to deceive and defraud the public and appropriate to itself Plaintiffs' rights in and to the Barney® Characters and the Bob the Builder® Characters' trademarks and service marks. Such acts constitute acts of unfair competition against Plaintiffs under 15 U.S.C. § 1125(a)(1)(B).

110.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct.  Accordingly, Plaintiffs are entitled to recover their damages, as well as Defendants' profits received as a result of the infringement, pursuant to 15 U.S.C. § 1117(a).

111.    Unless Defendants' conduct is enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

112.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

## <u>COUNT V</u>
### (Infringement of Copyright - Copyright Act, 17 U.S.C. § 501 et seq.)

113.    Plaintiffs repeat each allegation contained in paragraphs 1 through 112 of this Complaint.

114.    Lyons is the owner of the federal copyright registrations in the Barney® Series, as well as other videotapes, DVDs, books, and live stage shows.  <u>See</u> Exhibits C, F, I, and K.  These registrations were duly and lawfully issued by the Copyright Office and remain in full force and effect.

115.    HIT is the exclusive United States licensee with respect to federal copyright registrations in episodes of the BTB Series, as well as other videotapes, DVDs, and books, a

representative list of which is incorporated by reference and attached hereto.  See Exhibit O.

These registrations were duly and lawfully issued by the Copyright Office and remain in full

force and effect.

116.    The Barney® Characters and the Bob the Builder® Character are the subject of

copyright protection.

117.    Lyons and HIT have published the copyrighted works featuring the Protected

Characters in strict compliance with the provisions of the Copyright Act and all other laws

governing copyright, and the images depicted therein, including the Barney® Characters, and the

Bob the Builder® Character, have been manufactured and distributed under the authority of

Lyons and HIT.

118.    Lyons has been and still is the owner, and HIT has been and still is the exclusive

United States licensee, with respect to all rights, title, and interest in and to the copyrights in their

respective works.

119.    Defendants have infringed the copyrights in the above-entitled works and in the

Barney® Characters and the Bob the Builder® Character contained therein by copying,

displaying, distributing, renting, and/or selling knock-off costumes depicting images

substantially similar to Plaintiffs' works in violation of the Copyright Act.

120.    Based on Defendants' activities, Lyons and HIT reasonably believe that

Defendants intend to continue the advertisement, marketing, promotion, sale, rental, display, and

distribution of their counterfeit "Barney", "Baby Bop", "BJ",  and "Bob the Builder" costumes.

121.    Lyons and HIT have been and continue to be damaged by Defendants' activities

and conduct.  Defendants have profited thereby and unless their conduct is enjoined, Lyons and

HIT and their goodwill and reputations will suffer irreparable injury which cannot be adequately

calculated or compensated solely by money damages.  Accordingly, Lyons and HIT seek

preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

122.    Plaintiffs are entitled to recover damages, which include its actual losses and any

and all profits Defendants have made as a result of their infringing conduct.  17 U.S.C. § 504.

Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c).

123.    Upon information and belief, Defendants' actions are willful, in that their actions

were at least in reckless disregard of Plaintiffs' rights in and to the Protected Characters.

Accordingly, the award of statutory damages should be enhanced in accordance with 17 U.S.C.

§ 504(c)(2).

124.    Furthermore, Plaintiffs are entitled to recover their full costs, including reasonable

attorneys' fees pursuant to 17 U.S.C. § 505.

### COUNT VI
### (Common Law Unfair Competition)

125.    Plaintiffs repeat each allegation contained in paragraphs 1 through 124 of this

Complaint.

126.    Upon information and belief, Defendants' actions as described above have been

undertaken with the intention of benefiting from and profiting upon the name and associated

good will connected with the Protected Characters.  This goal is accomplished by Defendants'

use of the name and trademarks and accompanying trade dress owned by Plaintiffs.

127.    Defendants' use of the name and trademarks and accompanying trade dress

owned by Plaintiffs is intended to and, unless restrained by this Court, will lead and tends to lead

the public to believe that there is a connection or association between Defendants and Plaintiffs,

when in fact there is none.

128.    Upon information and belief, Defendants have made and, unless enjoined, will continue to make considerable profit as the direct result of their wrongful actions, which have been undertaken in wanton, willful, and reckless disregard of Plaintiffs' rights.

129.    Defendants' actions injure Plaintiffs' reputation and goodwill and expressly mislead the public by falsely imputing a connection or relationship between Defendants' inferior products and services and Plaintiffs.  This will cause Plaintiffs to suffer financially, and constitutes unfair competition in derogation of the common law of the State of New York.

## COUNT VII
### (Common Law Trademark Infringement)

130.    Plaintiffs repeat each allegation contained in paragraphs 1 through 129 of this Complaint.

131.    Defendants have used their substantially similar or virtually identical "Barney", "Baby Bop", "BJ", and "Bob the Builder" character costumes in performances offered to consumers in New York State, and have thus infringed on Plaintiffs' exclusive common law trademark rights.

132.    Such conduct is likely to cause confusion, deception and mistake in the minds of members of the public with respect to the origin, source, and affiliation of one or more of Defendants' knock-off "Barney," "Baby Bop", "BJ", and "Bob the Builder" character costumes.

133.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct.  Defendants have profited thereby and unless their conduct is enjoined, Plaintiffs and their goodwill, business reputation and the distinctive quality of Plaintiffs' trademarks, service marks, and trade dress will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

134.    Plaintiffs have no adequate remedy at law.

135.   Defendants' wrongful conduct arises directly out of and is connected to Defendants' advertising activities.

<u>COUNT VIII</u><br>
<b>(Violation of Section 360-<i>l</i> of the New York General Business Law)</b>

136.   Plaintiffs repeat each allegation contained in paragraphs 1 through 135 of this Complaint.

137.   The Barney® Characters and the Bob the Builder® Character are distinctive and/or have acquired secondary meaning in the marketplace.

138.    Defendants' acts as described above are likely to dilute, have diluted and, unless enjoined, will continue to dilute the unique and distinctive quality of Plaintiffs' trademarks in the Barney® Characters and the Bob the Builder® Character.

139.   Specifically, Defendants' use of marks substantially similar or virtually identical to the those of one or more of the Barney® Characters and the Bob the Builder® Character in conjunction with the offering and provision of children's entertainment services blur and dilute Plaintiffs' trademarks in such characters as unique identifiers of Plaintiffs' television programs, movies, DVDs, books, and other media products featuring the Barney® Characters and the Bob the Builder® Character.

140.   Alternatively, the shoddy quality of Defendants' counterfeit "Barney", "Baby Bop", "BJ", and "Bob the Builder" character costumes that Defendants use in renting or selling costumes and/or providing children's entertainment services tarnishes and dilutes Plaintiffs' trademarks and service marks as the purchasing public will associate the lack of quality of Defendants' costumes with Plaintiffs.

141.    Defendants' conduct violates Section 360-<i>l</i> of the New York General Business Law.

142.    As a direct and proximate result of Defendants' willful and wanton acts and conduct, Plaintiffs' reputation and goodwill have been damaged.

143.     Defendants' acts and conduct cause irreparable injury to Plaintiffs and to their reputation and goodwill, and will continue to do so unless enjoined by this Court.

144.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray for the following relief:

1.    That Defendants and their respective agents, servants, employees, contractors, and all persons, firms, corporations, or entities acting under Defendants' direction, authority or control, and all persons acting in concert with any of them, be enjoined preliminarily and permanently from:  (a) purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-size costumes depicting the Barney®, Baby Bop®, and BJ®, and Bob the Builder® characters for children's entertainment services or otherwise;  (b) using Plaintiffs' copyrights, trademarks, service marks, logos and trade dress, or any copy, counterfeit or imitation of any of them in any manner, including, but not limited to advertising, promoting, and/or marketing children's entertainment services; and (c) committing or inducing others to commit any other infringing acts calculated to cause purchasers to believe that Defendants adult-size costumes are Plaintiffs' genuine products;

2.    That Defendants be required to account pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117 for Plaintiffs' losses and Defendants' profits derived from advertising, promoting, marketing, purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-size costumes

depicting the Barney®, Baby Bop®, and BJ®, and Bob the Builder® characters for children's entertainment services;

3.      That Defendants be ordered to pay statutory damages for willful copyright infringement in an amount of not less than $150,000 per copyrighted work infringed;

4.      That Plaintiffs be awarded damages in an amount to be determined at trial in connection with Defendants' acts of trademark infringement, unfair competition, and dilution of Plaintiffs' trademark and trade dress under both the Lanham Act and New York law;

5.      That Defendants be ordered to pay either actual damages and infringing profits or statutory damages for willful trademark counterfeiting in an amount of up to $1,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed as the Court considers just;

6.      That all infringing "Barney", "Baby Bop", "BJ", and "Bob the Builder" character costumes, all advertising incorporating Plaintiffs' copyrights, trademarks, service marks, logos and trade dress, or any copy or imitation of any of them, and any costume molds be surrendered, impounded, and destroyed pursuant to Lanham Act, 15 U.S.C. § 1118 and Copyright Act, 17 U.S.C. § 503;

7.      That Defendants be ordered to pay Plaintiffs' costs incurred herein, including reasonable attorneys' fees;

8.      That trebling of damages be ascertained for all trademark damages assessed herein;

9.      That exemplary and punitive trademark damages be awarded; and

10.    That Plaintiffs be awarded such other and further relief as is just, proper, and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all issues so triable.

DATED:       December 10, 2007        By: _____
                                          Toby M. J. Butterfield
                                          Matthew A. Kaplan
                                          Zehra J. Abdi

                                      COWAN, DeBAETS, ABRAHAMS &
                                      SHEPPARD LLP
                                      41 Madison Avenue, 34th Floor
                                      New York, New York 10010
                                      Tel:  (212) 974-7474
                                      Fax:  (212) 974-8474

                                      Attorneys for Plaintiffs
                                      LYONS PARTNERSHIP, L.P. and
                                      HIT ENTERTAINMENT, INC.