UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

LYONS PARTNERSHIP, L.P. AND HIT
ENTERTAINMENT,

                                        <u>REPORT AND</u>
                        Plaintiffs,      <u>RECOMMENDATION</u>

        - against -                      CV 07-3322 (SJ)(MDG)

D&L AMUSEMENT & ENTERTAINMENT, INC.,
CHRISTA TEDESCO, ALL IN ONE
ENTERTAINMENT INC., JOHN R. ALBUJA,
RAZZLE KIDAZZLE INC., LINDA LIPPO,
BOBBY'S WORLD PARTY CENTER INC.,
MICHELLE ESPOSITO, THERESA ABREU
D/B/A SILLYBRATIONS, AND JULIE
LOFSTAD D/B/A A CHARACTER CREATION

                        Defendants.

- - - - - - - - - - - - - - - - - - X


        Plaintiffs bring this copyright and trademark infringement

action alleging that the ten defendants infringed their

intellectual property rights in Barney® and Bob the Builder®

characters. Defendants D&L Amusement & Entertainment

Inc.(hereinafter "the D&L defendants"); Razzle Kidazzle Inc. and

its alleged owner, Linda Lippo (hereinafter "the Razzle

defendants"); and All in One Entertainment, Inc. and its alleged

owner, John R. Albuja (hereinafter "the All in One defendants")

have never responded to the complaint nor to plaintiffs' attempts

to engage in settlement discussions.  The Honorable Sterling B.

Johnson has referred Plaintiffs' motion for default judgment

against these defendants to me for a report and recommendation as

to the appropriate relief.[1]  No oppositions to the motion have
been filed.

For the reasons set forth below, the court respectfully
recommends that plaintiffs' motion for an injunction be granted.
The Court further recommends that plaintiffs be awarded damages
and fees as set forth below.


BACKGROUND

The following undisputed facts are adduced from plaintiffs'
First Amended Complaint (ct. doc. 29) and in submissions in
support of default, and are taken as true for purposes of
deciding this motion.  See Greyhound Exhibitgroup, Inc. v.
E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)
(citations omitted).

Plaintiff Lyons Partnership, L.P. ("Lyons") is the creator
of the popular children's dinosaur character Barney®, as well as,
more recently, Baby Bop® and BJ® (hereinafter collectively
"Barney® Characters").  Lyons owns the intellectual property
rights in the Barney® characters and "is engaged in, among other
things, the creation, production and distribution of books,

_____

[1] Plaintiffs have apparently resolved claims against the
other five defendants. By Stipulation and Order dated 3/14/08
defendant Julie Lofstad d/b/a A Character Creation was dismissed
from this action.(ct. doc. 44).  By Order endorsed on August 26,
2009, plaintiffs dismissed their claims against Defendant Christa
Tedesco.(ct. doc. 85).  Defendants Bobby's World Party Center,
Inc. and Michelle Esposito were dismissed by Stipulation and
Order dated 9/23/09 (ct. doc. 87). Theresa Abreu d/b/a
Sillybrations were dismissed by Stipulation and Order dated
6/19/08 (ct. doc. 49).

videocassettes, television programs, and plush dolls, and has commercially exploited and licensed the Barney® Characters . . ." Am. Compl. ¶¶ 2, 7. Plaintiff HIT Entertainment Inc. ("HIT") "is a fully integrated studio that produces and distributes worldwide television programming and home entertainment, publishing, and other licensed merchandise depicting . . . classic children's entertainment properties, including the Barney® Characters and the Bob the Builder® Character." Am. Compl. ¶ 8. "HIT is the exclusive United States licensee of the intellectual property rights in and to the character Bob the Builder®." Am. Compl. ¶ 2.

Neither Lyons nor HIT have "licensed the manufacture (other than for [their] own use), distribution, sale, or rental of any costumes for adults that depict the Barney® Characters" or the Bob the Builder® Character. Am. Compl. ¶¶ 40, 42. According to plaintiffs, "[t]he primary reason for the decision not to license adult costumes for commercial use is to preserve and carefully monitor the exposure of the Barney® Characters and the Bob the Builder® Character so that very young children will not be distressed or upset by the unpredictable (and potentially dangerous) conduct of unauthorized impersonators in knock-off costumes trading on the goodwill of the Bob the Builder® and Barney® Characters." Am. Compl. ¶ 43.

Defendants are children's entertainment services which, among other things, use and rent "adult-sized counterfeit costumes depicting popular television and cartoon characters" for

children's parties, and their owners.  Am. Compl. ¶¶ 10(a),
11(a), 12(a), 13(a), 14(a).

After conducting various investigations, plaintiffs
concluded that defaulting defendants were infringing their
intellectual property rights by making commercial use of
counterfeit costumes bearing the likeness of the Barney® and Bob
the Builder® Characters.  Am. Compl. ¶¶ 48-52.  Specifically, its
investigation of the Razzle defendants stemmed from an invoice
seized pursuant to a court order from a manufacturer of
counterfeit costumes in San Diego, California, which showed a
sale of a number of costumes, including a "Purple Dino" costume,
in 2004 to Razzle Kidazzle on an order made by Linda Lippo.
Declaration of Matthew Kaplan ("First Kaplan Decl.") (ct. doc.
58) at ¶ 9, Exh. 4.  In a telephone call on May 31, 2006
initiated by investigator Joseph Leichman, a woman identifying
herself as "Mary" at Razzle Kidazzle stated that the company had
Barney® and Bob the Builder® costumes which Linda, the company's
owner, or someone else would wear.  Declaration of Joseph
Leichman (ct. doc. 60) at ¶¶ 7-9.  On June 9, 2006, investigator
Nina Sherman and a co-investigator visited Razzle Kidazzle and
spoke with a woman named Linda who, after checking the back of
the store, wrote out a list of costumed characters that the store
had, which included "Barney®."  Declaration of Nina Sherman (ct.
doc. 59) at ¶¶  6-8.

Similarly, Joseph Leichman called D & L Amusement &
Entertainment, Inc. on June 5, 2006, and spoke with a woman

identifying herself as "Darlene" who stated that her company had over 100 costumes for characters looking like Barney®, Baby Bop® and Bob the Builder®. Declaration of Joseph Leichman (ct. doc. 66) at ¶ 7. On June 9, 2006, the Mr. Leichman and co-investigator Nina Sherman visited D & L Entertainment, which was located in a flower shop called "Teresa's Floralart, Ltd." Id. at ¶¶ 8-9; Declaration of Nina Sherman (ct. doc. 66) at ¶ 6. Inside the store, they saw costume character heads, including heads of Baby Bop®, Barney®, Clifford the Dog and Bob the Builder®. Id. They also obtained a completed order for "Purple Dinosaur, Green Female Dino, Construction Worker, Red Dog" for a party on July 8. Id. B (Leichman) at ¶¶ 8-9, Exhs. A and; id. (Sherman) at ¶ 8-9.

In addition, investigator Sarena Horowitz call a company called Party Scents on August 11, 2005 to inquire about costumes for children's characters and was referred to All in One Entertainment in Queens. Declaration of Sarena Horowitz 71 (ct. doc. 66) at ¶¶ 7-9. In a call to All in One, the investigator spoke with a man identifying himself as "John" who said he could provide costumed characters for Barney®, Clifford and Bob the Builder®. Id. at ¶¶ 8-9.

Prior to commencing this action, Matthew Kaplan, counsel for plaintiffs sent a "demand package" to John Albuja at All in One Entertainment, Inc. Declaration of Matthew Kaplan (ct. doc. 70) at ¶ 2. He subsequently received a letter from defendant Albuja for All in One stating that his business is a small operation and

that it had destroyed all the character costumes.  Id., Exh. 1.
He commenced this action against the D&L defendants when
settlement discussions did not reach conclusion. Id. at 9.
Plaintiffs sent cease-and-desist letters to the defaulting
defendants, all of whom either failed to respond or stopped
responding after an initial correspondence.  Am. Compl. ¶ 43.  As
a result, plaintiffs instituted the present action against
defendants, alleging copyright and trademark infringement under
the Copyright and Lanham Acts, and related state law claims.
Plaintiffs seek preliminary and permanent injunctions as well as
statutory damages.


DISCUSSION

## I. Default Judgment

       Entry of a default judgment is a two-step process and
requires first that the clerk of the court "enter the party's
default" indicating that a party has "failed to plead or
otherwise defend." Fed. R. Civ. 55(a).  After the clerk's entry
of default, the opposing party generally requests that a court
enter a default judgment against the defaulting parties. See Fed.
R. Civ. P. 55(b)(2).  A defendant's default is an admission of
all well-pleaded factual allegations in the complaint except
those relating to damages.  See Greyhound Exhibitgroup, Inc. v.
E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.1992).  The
movant need prove "only that the compensation sought relate[s] to
the damages that naturally flow from the injuries pleaded." Id.

"[A]fter [a] default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Leider v. Ralfe, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)(quoting In re Indus. Diamonds Antitrust Litig., 119 F.Supp. 2d 418, 420 (S.D.N.Y. 2000). The court must also determine the amount of damages, actual or statutory, that may be assessed. It is in the court's discretion to require an evidentiary hearing or to rely on detailed affidavits or documentary evidence in making this determination. See Fed.R.Civ.P. 55(b)(2). Chun Jie Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases).

To determine whether the defendants, by virtue of their default, are liable for those claims asserted against them by plaintiffs, the court looks to the law governing those claims, which, in this case, arise under the Lanham Act, Copyright Act, and New York statutory and common law. This Court shall examine the claims against each group of defaulting defendants separately.

However, this Court notes that the claims against the various defendants may have been improperly brought in a single action. Rule 20(a) of the Federal Rule of Civil Procedure states: "Persons . . . may be joined in one action as defendants if: any right to relief is asserted against them jointly, severally, or in the alternative, with respect to or arising out

of the same transaction, occurrence, or series transactions or
occurrences; and any question of law or fact common to all
defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).
Thus, a plaintiff may join parties only in those circumstances
where plaintiff asserts that the right to relief arises out of
(1) the same transaction, occurrence or series of occurrences and
(2) any question of law or fact common to all defendants will
arise in the action.  This test is in the conjunctive; both
prongs of Rule 20 must be satisfied for joinder to be proper.  In
all other circumstances, joinder of parties in one action is
improper.  <u>Nassau County Association of Insurance Agents, Inc. v.
Aetna Life & Casualty Co.</u>, 497 F.2d 1151, 1154 (2d Cir. 1974).

Although the claims against each defaulting defendant raise
common questions of law - whether defendants' conduct violate the
certain statutes, there are no allegations that plaintiffs'
claims arise out of the same transaction or that the defendants
acted jointly or conspired with each other.  <u>See Tele-Media Co.
of Western Connecticut v. Antidormi</u>, 179 F.R.D. 75, 76 (D. Conn.
1998).  Nevertheless, since Judge Johnson has already granted
plaintiffs' motion for entry of default judgment and there is no
prejudice to any defaulting defendant, whose liability may be
established upon default irrespective of the presence of any
other defendant, I will report and recommend on damages.
However, plaintiffs warned that they should consider in future
cases brought whether joinder is proper.

## II. Liability of Defendants

In their original complaint, plaintiffs asserted eight claims for relief: four claims under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, and 1125; a claim for infringement under the Copyright Act, 17 U.S.C. § 501 et seq.; two common law claims for unfair competition and trademark infringement and a claim under the New York General Business Law. In their Amended Complaint (ct. doc. 29), plaintiffs assert the same eight claims alleged in the original complaint, plus an additional claim for counterfeiting under the Lanham Act set forth as Count III.

As a preliminary matter, this Court notes that although the plaintiff effectuated service of the complaint on the five defaulting defendants, plaintiffs did not serve all the defendants with the Amended Complaint. See ct. docs. 37-1 at ¶¶ 2 and 3; 46-1 at ¶¶ 2, 3 and 7; 47-1 at ¶¶ 2, 3 and 6; 58-1 at ¶¶ 3, 4, 5; 64 at ¶ 9; 70 at ¶ 6. Plaintiffs completed service of the Amended Complaint on D & L and Razzle Dazzle by serving the Secretary of State, and on defendants All in One and Albuja by Federal Express.[2] Id. However, plaintiffs were unable to serve the Amended Complaint on defendants Linda Lippo, the

---

[2] Service by overnight mail is proper service in accordance with Rule 5(b)(2)(C), which was triggered after Mr. Albuja appeared on behalf of himself and his corporation at a conference held on November 30, 2007. See N.Y. Life Ins. Co. v. Brown, 84 F.3d 137, 142 (5th Cir. 1996) (holding that participation in telephone conference before magistrate judge constitutes "appearance" for Rule 5).

principal of Razzle Dazzle, but argues that she had notice.  See
ct. docs. 58-1 at ¶¶ 7.

However, Fed. R. Civ. 5(a) provides that service "every
pleading subsequent to the original complaint ... need be made on
parties in default for failure to appear [, ...] pleadings
asserting new or additional claims for relief against them shall
be served upon them in the manner provided for service of summons
in Rule 4."  Fed. R. Civ. P. 5(a).  "Courts have refused to give
effect to amended complaints not properly served in accordance
with Rule 5(a)."  In re Crazy Eddie Sec. Litig., 948 F.Supp.
1154, 1164 (E.D.N.Y. 1996); see Varnes v. Glass Bottle Blowers
Assoc., 674 F.2d 1365, 1369 (11th Cir. 1982); Int'l Controls
Corp. v. Vesco, 556 F.2d 665, 669 (2d Cir. 1977); Kleartex, Inc.
v. Kleartex SDN BHD, No. 91 Civ. 4739, 1994 WL 733688 (S.D.N.Y.
1994); National Development Co. v. Triad Holding Corp., 131
F.R.D. 408, 414 (S.D.N.Y. 1990), aff'd, 930 F.2d 253 (2d Cir.
1991).

Here, the Amended Complaint contains a new claim for
counterfeiting under the Lanham Act.  Compare Am. Compl. at
¶¶ 102-107 with Compl. passim.  Because plaintiffs concede that
they did not serve the Amended Complaint upon defendant Lippo in
accordance with Rule 4, this Court may not consider the
counterfeiting claim asserted against her.

### A. Lanham Act

The Lanham Act seeks to "regulate commerce within the
control of Congress by making actionable the deceptive and

misleading use of marks in  . . . commerce." 15 U.S.C. § 1127.
Specifically, the statute "protects the rights of the first user
of a trademark, particularly where that mark is a strong one."
Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 742 (2d Cir.
1998).  This is achieved "by barring a later user from employing
a confusingly similar work, likely to deceive purchasers as to
the origin of the later user's product, and one that would
exploit the reputation of the first user." Id. (citation
omitted).

Trademark Infringement. To succeed on a trademark
infringement claim under the Lanham Act, a plaintiff must
demonstrate that the defendant "(1) without permission, copied,
reproduced, or imitated the plaintiff's (2) registered trademark
in commerce (3) as part of the sale or distribution of goods or
services (4) and that such use is likely to cause confusion
between the two works." Id. (citation omitted).  See also 15
U.S.C. §1114(1).

False Designation of Origin. A false designation of origin
or false description claim under the Lanham Act is similar to a
trademark infringement claim except that it applies to
unregistered as well as registered trademarks.  To prevail on
such a claim, a plaintiff must prove that "'first, . . . its mark
merits protection, and second, that the defendant's use of a
similar mark is likely to cause consumer confusion,' as to
origin, sponsorship, or affiliation of the defendant's goods."
Muniz v. Morillo, 2008 WL 4219073, at *5 (S.D.N.Y. Sept. 10,

2008) (quoting <u>Brennan's, Inc. v. Brennan's Rest., L.L.C.</u>, 360
F.3d 125, 129-30 (2d Cir. 2004)) (additional citation omitted).
<u>See also</u> 15 U.S.C. § 1125(a)(1)(A).  A mark is entitled to
protection if it is validly registered or otherwise meets the
criteria for protection as an unregistered trademark.  <u>See</u> <u>Two</u>
<u>Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992)
("[T]he general principles qualifying a mark for protection under
§ 2 of the Lanham Act are for the most part applicable in
determining whether an unregistered mark is entitled to
protection under § 43(a)").  The claim applies not only to
"'passing off,' in which A promotes A's products under B's name,
but also 'reverse passing off,' in which A promotes B's products
under A's name."  <u>Carell v. Shubert Org., Inc.</u>, 104 F. Supp. 2d
236, 259 (S.D.N.Y. 2000) (citing <u>Waldman Publ'g Corp. v. Landoll,
Inc.</u>, 43 F.3d 775, 780 (2d Cir. 1994)).

     <u>Unfair Competition</u>. An unfair competition claim under the
Lanham Act is similar in spirit and substance to the other claims
cognizable under the Act.  At its core, this claim examines
"whether the public is likely to be misled into believing that
the defendant is distributing products manufactured or vouched
for by the plaintiff."  <u>Warner Bros., Inc. v. Gay Toys, Inc.</u>, 658
F.2d 76, 79 (2d Cir. 1981) (citations and internal quotation
marks omitted).  To state a claim of unfair competition under the
Lanham Act, the plaintiff must allege that the defendant: "(1)
made false representations, (2) for goods, (3) in interstate
commerce, (4) in commercial advertising or promotion, (5) about a

-12-

material facet of [the plaintiff's] product, (6) that caused damage to [the plaintiff]." <u>Spotless Enters., Inc. v. Carlisle Plastics, Inc.</u>, 56 F. Supp. 2d 274, 277 (E.D.N.Y. 1999) (citations omitted). The claim does not require proof, however, of an "intent to deceive or bad faith." <u>See</u> <u>Id.</u> at 277-78. Nor, for that reason, is good faith a defense. <u>Id.</u> (citations omitted).

This court finds that the allegations contained in the Amended Complaint ant the plaintiffs' submissions in support of their motions for default judgment clearly establish liability against the defendants on these three Lanham Act claims. The complaint alleges that both the Barney®  and  Bob the Builder® Characters are registered trademarks and thus merit the protection of the Lanham Act. <u>See</u> Am. Compl. ¶¶ 15-37. The complaint further alleges that the defendants were in the business of providing entertainment to children by renting and/or using life-size "knock off" costumes of the Barney®  or  Bob the Builder®  Characters without procuring the required licenses or agreements from plaintiffs, and in doing so, sought to deceive its consumers that those costumes were genuine, i.e., made and licensed by plaintiffs, when, in actuality, they were unauthorized imitations. <u>See</u> Am. Compl. ¶¶ 62-65. Plaintiffs also showed that defendants offered investigators hired by the plaintiffs children's entertainment services using these "knock off" costumes of plaintiffs' genuine characters. I thus conclude, as alleged in the Amended Complaint, that plaintiffs have proven

the intent to deceive and defraud the public and to appropriate [p]laintiffs' exclusive rights in and to the [Barney® and Bob the Builder®] Characters and related intellectual property." Am. Compl. ¶ 65. I also find that plaintiffs have established that defendants' conduct is "likely to cause confusion, cause mistake, or to deceive consumers, as to the source and origin of defendants' counterfeit costumes," and "will have a substantial, adverse impact on Plaintiffs' existing and projected interstate business of marketing products and services identified by the [Barney® and Bob the Builder®] Characters and related intellectual property and the resulting goodwill." Am. Compl. ¶¶ 66-67. Thus all the defaulting defendants are liable to plaintiffs for trademark infringement, false designation of origin, and unfair competition under the Lanham Act.

Trademark Counterfeiting. Plaintiffs also seek relief under the Lanham Act for trademark counterfeiting pursuant to sections 1114(1)(a) and 1116(d)(1). Instead of providing for a separate cause of action, however, 15 U.S.C. §1116(d)(1) deals distinctly with the relief available to a plaintiff who brings a claim under section 1114(1)(a). See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., No. 04-CV-2293 (JFB)(SMG), 2007 WL 74304, at *11 (E.D.N.Y. Jan. 8, 2007) ("The Court notes . . . that 15 U.S.C. § 1116 does not provide an independent cause of action for trademark violations"). The provision states in pertinent part:

> In the case of a civil action arising under section
> 1114(1)(a) of this title . . . with respect to a
> violation that consists of using a counterfeit mark in
> connection with the sale, offering for sale, or
> distribution of goods or services, the court may, upon
> ex parte application, grant an order under subsection
> (a) of this section pursuant to this subsection
> providing for the seizure of goods and counterfeit
> marks involved in such violation and the means of
> making such marks, and records documenting the
> manufacture, sale, or receipt of things involved in
> such violation.

15 U.S.C. § 1116(d)(1)(A) (emphasis added).

Plaintiffs do not seek an ex parte order pursuant to section 1116(d)(1)(A) for the seizure of the offending goods and marks at issue. Instead, they ask that the goods and marks at issue be "surrendered, impounded, and destroyed pursuant to [the] Lanham Act, 15 U.S.C. § 1118 and Copyright Act, 17 U.S.C. § 503" – a form of relief that is distinct from what is offered under section 1116(d)(1)(A). One provision speaks of deliverance and destruction, the other, of seizure. Compare 15 U.S.C. § 1118 (providing that offending goods be "delivered up and destroyed") with 15 U.S.C. § 1116(d)(1)(A) (providing for the "seizure of goods and counterfeit marks"). Section 1118 itself implicitly recognizes this distinction, providing that a party seeking an order to destroy articles seized pursuant to section 1116 comply with the additional procedural requirement that notice first be given to the US Attorney. 15 U.S.C. § 1118 ("The party seeking an order under this section for destruction of articles seized under section 1116(d) of this title shall give ten days' notice to the United States Attorney for the judicial district in which

such order is sought . . . ."). Because there is no evidence of
such notice, the court finds that plaintiffs are not entitled to
relief under section 1116(d)(1)(A).

### B. Copyright Infringement

The Copyright Act is codified under Title 17 of the United
States Code. See 17 U.S.C. §101 et seq. Section 501 of the
statute confers on "[t]he legal or beneficial owner of an
exclusive right under a copyright is entitled . . . to institute
an action for any infringement of that particular right committed
while he or she is the owner of it". 17 U.S.C. §501(b). To
prevail on a claim of copyright infringement under section 501,
"a plaintiff must show that: (1) he owns the copyright in the
work at issue; (2) the copyright has been registered in
accordance with the statute; and (3) the defendant copied
constituent elements of the work that are original." Orange
County Choppers, Inc. v. Olaes Enter., Inc., 497 F. Supp. 2d
541, 550 (S.D.N.Y.,2007)(citations and footnotes omitted). Proof
of the third element requires a further showing that "(1) the
defendant has actually copied the plaintiff's work; *and* (2) the
copying is illegal because a substantial similarity exists
between the defendant's work and the protectible elements of
plaintiff's." County of Suffolk v. First Am. Real Estate
Solutions, 261 F.3d 179, 187 (2d Cir. 2001) (citations and
internal quotation marks omitted). "A certificate of copyright
registration is prima facie evidence that the copyright is

valid." <u>Fonar Corp. v. Domenick</u>, 105 F.3d 99, 104 (2d Cir. 1997) (citing 17 U.S.C. §410(c)) (additional citation omitted).

Plaintiffs have alleged that they own copyrights in the Barney® characters and are the exclusive US licensees of the copyrights in the Bob the Builder® character. According to plaintiffs, these copyrights were issued by the Copyright Office "and remain in full force and effect." Am. Compl. ¶¶ 114, 115. Plaintiffs alleged and discovered in their investigation that defendants have copied, rented, sold, distributed, displayed, and/or sold "knock off" costumes "depicting images substantially similar to" the Barney® and Bob the Builder® characters in which plaintiffs own copyrights. Am. Compl. ¶¶ 119-120. Thus plaintiffs' have established their claim of copyright infringement by defendants.

### C. Common Law Unfair Competition

"The common-law tort of unfair competition is similar to an unfair-competition claim under the Lanham Act." <u>Laser Diode Array, Inc. v. Paradigm Lasers, Inc.</u>, 964 F. Supp. 90, 95 (W.D.N.Y. 1997). Both are directed at conduct by which a "'defendant has misappropriated the labors and expenditures of another.'" <u>Id.</u> (quoting <u>Saratoga Vichy Spring Co. v. Lehman</u>, 625 F.2d 1037, 1044 (2d Cir. 1980)). To prevail on an unfair competition claim under New York law, a "plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief" as well as make a showing of "bad faith." <u>Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth,</u>

Inc., 58 F.3d 27, 35 (2d Cir. 1995) (citation omitted). Unfair practices that are covered by the claim include those involving the "'misappropriation of the skill, expenditures, and labor of another.'" Laser Diode, 964 F. Supp. at 95 (quoting Am. Footwear Corp. v. Gen'l. Footwear Co., 609 F.2d 655, 662 (2d Cir. 1979)). As discussed above, plaintiffs have offered entertainment services using "knock-off" costumes of children's characters for which plaintiffs own the rights. Such misappropriation constitutes unfair competition.

## D. Common Law Trademark Infringement

A common law trademark infringement claim is similar to the corresponding Lanham Act claim. Thus, proof of a trademark infringement claim under the Lanham Act will entitle one to relief under its state law analogue. Nike, Inc. v. Top Brand Co. Ltd., 2005 WL 1654859, at *7 (S.D.N.Y. Jul. 13, 2005) ("Plaintiffs' claim of common law trademark infringement requires them to meet the same elements as their Lanham Act claims, with a similar emphasis on the likelihood of confusion") (citation omitted). To prevail under either claim, a plaintiff must first show that it "has a valid mark that is entitled to protection, and [second that] the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Audi AG v. Shokan Coachworks, Inc., 2008 WL 4911730, at *16 (N.D.N.Y. 2008) (citing Gruner+Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993)). For the reasons discussed above with respect to infringement under the Lanham

Act, plaintiffs have shown that defendants' are liable for common law infringement.

### E. Section 360l of New York's General Business Law

Plaintiffs' last claim is one for trademark dilution under section 360-l of New York's General Business Law.  That provision provides a plaintiff with injunctive relief in cases where there is a "[l]ikelihood . . . of dilution of the distinctive quality of a mark or trade name."  N.Y. Gen. Bus. Law §360-l.  The Second Circuit has defined dilution "'as either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey,'" Deere & Co.  v. MTD Prods., Inc., 41 F.3d 39, 42-43 (2d Cir. 1994) (citation omitted).  Dilution can occur "in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services," N.Y. Gen. Bus. Law §360-l.  Thus, in order to prevail on a claim under section 360-l, a plaintiff must prove that (1) its mark possesses a "distinctive quality capable of dilution" and (2) there is a likelihood of such dilution.  Johnson & Johnson Consumer Cos., Inc. v. Aini, 540 F. Supp. 2d 374, 394 (E.D.N.Y. 2008) (citation and quotation marks omitted).  Distinctiveness, in this context, is measured by "the strength of a mark for infringement purposes."  Id. (citation and quotation marks omitted).

Plaintiffs have amply shown both the distinctiveness and widespread use of children's characters at issue. As widely reported in the media, plaintiffs' Barney® characters and Bob the Builder® character are unique and popular and the television programs and recordings based on these characters have been recognized for their excellence and been tremendously successful. First Kaplan Decl. (ct. doc. 58) at ¶¶ 23-37. Plaintiffs have also been very deliberate in limiting and controlling the use of these characters. Id. at ¶¶ 38-47. Under these circumstances and as discussed above, plaintiffs have sufficiently alleged that defendants caused dilution of plaintiffs' marks.

In sum, plaintiffs have, thorough well pled allegations in their Amended Complaint and submissions in support of default judgment, proven that defendants are liable for all the causes in the Amended Complaint except for their Third Claim for Trademark Counterfeiting under the Lanham Act.

III. Relief

A. Statutory Damages

Plaintiffs seek statutory damages against each defendant: 1) under the Copyright Act in the amount of $25,000 for each character alleged to be infringed, and 2)under the Lanham Act in the amount of $25,000 for each trademark alleged to be infringed.

Under the Copyright Act of 1976, a prevailing plaintiff, upon request, may be awarded statutory damages in lieu of actual damages and profits, "in a sum of not less than $750 or more than

$30,000 as the court considers just." 17 U.S.C. § 540(c)(1).

Upon a showing of willfulness, this amount may be increased at

the Court's discretion to a sum of not more than $150,000.  Id.

§ 504(c)(2).

Under the Lanham Act, a trademark owner may choose to

recover actual damages or statutory damages in cases of

infringement. 15 U.S.C. § 1117(c), (d).  Pursuant to 15 U.S.C.

§ 1117(c), statutory damages may be awarded in the amount of:

> 1) not less than $1,000 or more than
> $200,000 per counterfeit mark per type of
> goods or services sold, offered for sale, or
> distributed, as the court considers just; or
> 2) if the court finds that the use of
> the counterfeit mark was willfull, not more
> than $2,000,000 per counterfeit mark per type
> of goods or services sold, offered for sale,
> or distributed, as the court considers just.

15 U.S.C. § 1117(c).

Here, despite receiving settlement demand packages and

demands to cease and desist their infringing activities,

defendants did not respond.  See Kaplan Decl.  ¶ 2 (Razzle and

D&L Defendants), ¶ 2-17 (All In One Defendants). By virtue of

their default, defendants have admitted plaintiffs' allegation

that they acted knowingly and intentionally or with reckless

disregard or willful blindness to plaintiffs' rights.

Accordingly, plaintiffs are entitled to statutory damages.

In the absence of any guidelines for determining the

appropriate award for willful trademark infringement, courts have

looked for guidance to the better developed case law for willful

copyright infringement. See Malletier v. Carducci Leather Fashions, Inc. et al., 648 F.Supp.2d 501, 504 (citing cases). Where the infringement has been shown to be willful, a statutory award should incorporate a compensatory as well as a punitive component to discourage further wrongdoing by the defendants and others. See id. at 504. In similar situations courts in this circuit have awarded $25,000 per infringing mark or group of marks. See Gucci Am. Inc. v. Gold Ctr. Jewelry, 997 F.Supp. 399, 401 (S.D.N.Y. 1998)(awarding $25,000 per trademark violation sought by plaintiffs against defaulting defendants); Polo Ralph-Lauren, 1999 WL 33740332, at *7 (awarding $25,000 per trademark violation against defaulting defendants).

Here, because defendants have failed to participate in this action, it is impossible to estimate the scope of their business and thus their profits. The court thus concludes that the $25,000 suggested by plaintiffs per trademark and per copyright is an appropriate statutory damages award.

The court notes, however, that plaintiffs may not seek duplicative statutory damages under multiple legal theories for the same intellectual property injury. See Tu v. Tad System Technology, Inc. 2009 WL 2905780 *3-4 (E.D.N.Y. Sept. 10, 2009)(court held that plaintiffs could not recover under both the Copyright and Lanham Acts). As the Second Circuit has made clear, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497

-22-

(2d Cir. 1997). "[A]lthough [the defendants] may have committed [multiple] wrongs under the separate statutory schemes . . . those wrongs . . . produced one harm -[plaintiff's] economic loss." <u>Tu v. Tad Systems</u>, 2009 WL 2905780 *4 (E.D.N.Y. Sept 10, 2009)(citations omitted). As such, I recommend that $25,000 of statutory damages shall be awarded per each trademark/character alleged to have been infringed, regardless of the legal theories under which the claims were jointly brought. Accordingly, I recommend that the court award damages of $50,000 against the Razzle and All In One defendants for their infringement of the Barney® and Bob the Builder® characters, and $75,000 against D&L for their infringement of the Barney®, Bob the Builder® and Baby Bop® characters.

### B. Permanent Injunction

Plaintiffs seek permanent injunctions prohibiting "Defendants and their respective agents, servants, employees, contractors, and all persona, firms, corporation, or entities acting under Defendants' direction, authority or control, and all persons acting in concert with any of them, be enjoined preliminarily and permanently from: (a) purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-size costumes depicting the Barney, Baby Bop, BJ, and Bob the Builder characters for children's entertainment services or otherwise; (b) using Plaintiffs' copyrights, trademarks, service marks, logos and trade dress, or any copy, counterfeit or imitation of any of them in any manner, including,

but not limited to advertising, promoting, and/or marketing
children's entertainment services; and (c) committing or inducing
others to commit any other infringing acts calculated to cause
purchasers to believe that Defendants' adult-size costumes are
Plaintiffs' genuine products".  Am. Compl. ¶ 144(I).
"A court may 'issue an injunction on a motion for default
judgment provided that the moving party shows that (1) it is
entitled to injunctive relief under the applicable statute and
(2) it meets the prerequisites for the issuance of an
injunction.'" Dunkin' Donuts Inc. v. Peter Romanofsky, Inc., No.
CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug.  8,
2006)(quoting King v. Nelco Indus.,Inc., No.  96-CV-4177, 1996 WL
629564, at *1(E.D.N.Y. Oct. 23, 1996)).  Plaintiffs satisfy both
of these prerequisites.

Under section 34 of the Lanham Act, the court has the "power
to grant injunctions, according to the principles of equity and
upon such terms as the court may deem reasonable."  15 U.S.C.
§ 1116(a).  Similarly, under the Copyright Act, the court "may .
. . grant temporary and final injunctions on such terms as it may
deem reasonable to prevent or restrain infringement of a
copyright." 17 U.S.C. § 502(a).  To obtain a permanent
injunction, the movant must establish that 1) absent injunctive
relief, it will suffer irreparable harm, and 2) actual success on
the merits.  Guishan, Inc. v. Scooby Scraps, Inc., No. 08-cv-
2684, 2008 U.S. Dist. LEXIS 76585, at *4 (E.D.N.Y. Sept. 16,
2008); Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F.

Supp. 2d 217, 240 (S.D.N.Y. 2004). Generally, the movant must
also show the threat of a continuing violation in order to obtain
injunctive relief. See Boisson v. Banian Ltd., 280 F. Supp. 2d
10, 15 (E.D.N.Y. 2003). As discussed, plaintiffs have
demonstrated defendants' liability, and thus, actual success on
the merits. Where, as here, plaintiffs have established a prima
facie case of infringement, irreparable harm is presumed. See
Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir.
1988). Moreover, it is likely that in the absence of an
injunction defendants will continue to infringe plaintiffs'
trademark interests, particularly in light of defendants'
intentional use of adult-sized costumes bearing the likenesses of
the Barney® Characters and Bob the Builder® Character even after
plaintiffs sent notices of infringement and settlement demand
packages to defendants concerning their activities. See Am.
Compl. at ¶¶ 53,56,58. Although defendant John Albuja sent a
letter on behalf of All in One stating that he had destroyed the
costumes, there are no assurances that he or his company will not
acquire other costumes in the future. Since plaintiffs have met
the requisite showing to justify issuance of a permanent
injunction, I recommend that plaintiffs' request for injunctive
relief against defendants be granted.

   C.  Costs and Attorneys' Fees

    Plaintiffs also seek: (a) $2,366.00 in attorneys' fees and
$243.00 in costs from the D&L Defendants, See Kaplan Decl. at
¶ 19; (b) $4,314.00 in attorneys' fees and $243.00 in costs from

the All In One Defendants, <u>See</u> Kaplan Decl. at ¶ 29; and (c) $2,574.00 in attorneys' fees and $243.00 in costs from the Razzle Defendants, <u>See</u> Kaplan Decl. at ¶ 18.[3]

The Copyright Act, 17 U.S.C. § 505, allows the court to award reasonable attorneys' fees. Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) allows a prevailing party to recover reasonable attorneys' fees in exceptional cases. A finding of willful infringement is sufficient for a court to find the case exceptional for the award of attorneys' fees. <u>See</u> <u>Bambu Sales v. Ozak Trading</u>, 58 F.3d 849, 854 (2d Cir. 1995); <u>Golight, Inc. v. Wal-Mart Stores, Inc.</u>, 355 F.3d 1327, 1339-40 (Fed. Cir. 2004). Additionally, the Lanham Act provides for the award of costs to a prevailing plaintiff in all cases. 15 U.S.C. § 1117(a).

Willfulness is determined by an inquiry into whether the defendant acted with a reasonable belief that its actions would avoid infringement. <u>See</u> <u>Golight</u>, 355 F.3d at 1339. "When a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer." <u>Gucci Am., Inc. v. Myreplicahandbag.com</u>, No. 07 Civ. 2438, 2008 U.S. Dist. LEXIS 49480 (S.D.N.Y. Jan. 25, 2008) (citing <u>Tiffany (NJ), Inc. v. Luban</u>, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)). Plaintiffs'

---

[3] The fees requested by plaintiffs' represent work preformed through July 31, 2008, however plaintiffs have requested permission to supplement their request of attorneys' fees and costs to include those incurred in preparing these Motions for Default. I recommend that this Court permit the plaintiffs to do so within ten days after this court acts on this Report and Recommendation.

allegations establish that defendants intentionally copied plaintiffs' character costumes, all the time knowing that their actions were in contravention of plaintiffs' rights.  Am. Compl. at ¶¶ 53, 55-58.

Given the defendants' willful infringement and failure to participate in this action, an award of attorneys' fees and costs is appropriate.

In determining reasonable attorneys' fees, courts examine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).  A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates are determined by examining the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  Although attorney rates are generally evaluated in comparison to those charged in the district in which the court sits, Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997), courts in the Eastern District of New York often use

rates awarded across the river, in the Southern District of New York, as a basis for comparison. See Nicholson v. Williams, No. 00 CV 2229, 2004 WL 4780498, at *10-11 (E.D.N.Y. April 5, 2004); Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 63 (E.D.N.Y. 2003).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). In lieu of contemporaneous time records, an applicant may submit summaries accompanied by affidavits stating that the summaries are accurate and based on contemporaneous records. Cruz, 34 F.3d at 1160. These records should specify, for each attorney, the date, hours expended, and the nature of work. Carey, 711 F.2d at 1148. It is not required that counsel

describe in great detail how the time was spent, rather it is sufficient to identify the general subject matter of time expenditures.  <u>Perdue v. City Univ. of New York</u>, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998).

Plaintiffs seek attorneys' fees in the total amount of $9,254.00.  Plaintiffs' counsel's affidavit sets forth the hourly billing rates for the attorneys, interns and paralegals who worked on the case.  <u>See</u> Kaplan Decl. ¶¶ 11-15 (for Razzle Defendants), ¶¶22-27 (for All in One Defendants), and ¶¶ 12-17 (for D&L Defendants). Plaintiffs counsel also provided copies of his firm's statements for legal service incurred which describe, by attorney or paralegal, the nature of the work done, the hours expended, and the date on which the work was done.  <u>See</u> Kaplan Decl. ex. 6 (Razzle Defendants), ex.8 (All in One Defendants) and ex. 5 (D&L defendants).

Plaintiffs' counsel have submitted itemized statements for the time spent on this case for the following individuals: Toby Butterfield, a partner who has been litigating intellectual property cases for almost 2 decades; Matthew Kaplan, a senior associate who has practicing intellectual property; Zahra Abdi, an intellectual property associate; and John Bockwoldt, a legal intern/paralegal. Kaplan Decl. ¶ 12-15 (Razzle Defendants), ¶ 23-26 (All In One Defendants), ¶ 13-16 (D&L Defendants). For work done in 2007, plaintiffs request $425 per hour for Mr. Butterfield, $260 per hour for Mr. Kaplan and $135 per hour for Ms. Abdi. Kaplan Decl. ¶ 12-14 (Razzle Defendants), ¶ 23-25 (All

In One Defendants), ¶ 13-15 (D&L Defendants). For work done in 2008, plaintiffs request $440 per hour for Mr. Butterfield, $270 per hour for Mr. Kaplan and $160 per hour for Ms. Abdi. Kaplan Decl. ¶ 12-14 (Razzle Defendants), ¶ 23-25 (All In One Defendants), ¶ 13-15 (D&L Defendants). Plaintiffs request $75 per hour for work done by Mr. Bockwoldt. Kaplan Decl. ¶ 15 (Razzle Defendants), ¶ 26 (All In One Defendants), ¶ 16 (D&L Defendants).

The actual fee arrangement between a party and its counsel is relevant evidence of what constitutes a reasonable fee. Pugach ex rel. United States v. M&T Mortgage Corp., 564 F. Supp. 2d 153, 157 (E.D.N.Y. 2008). "Nonetheless, courts have acknowledged that what is 'reasonable' for purposes of a fee award to be paid by the losing party to the prevailing party in a litigation is not the same as the reasonableness of a bill that a law firm might present to its own paying client." Id. (quotation omitted). Here, the fees have actually been paid by the plaintiffs in this case, who this court finds to be sophisticated clients.

Based on my general knowledge of plaintiffs' counsel's practice, their work on intellectual property cases, and my knowledge of prevailing rates for such matters in New York, in addition to the fact that plaintiffs have already paid the claimed fees in this case, I find that the rates sought for Mr. Butterfield, Mr. Kaplan, Ms. Abdi and Mr. Bockwoldt are reasonable. See Gucci Am. Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 525 (S.D.N.Y. 2004) (finding reasonable billing

rates of $425 per hour for partner and $290 per hour for associate, where both attorneys were experts in trademark law and had published articles on the topics at issue in the litigation); Video-Cinema Films, Inc. v. Cable News Network, Inc., Nos. 98 Civ. 7128, et al., 2004 WL 213032, at *3 (S.D.N.Y. Feb. 3, 2004) (noting that in 2000, median billing rate for New York City intellectual property law firms was $370 per hour for partners and $250 per hour for associates); Stevens v. Aeonian Press, Inc., No. 00 Civ. 6330, 2002 WL 31387224, at *5 (S.D.N.Y. Oct. 23, 2002) (approving rate for partner time charged at a maximum of $460 per hour, associate time charged at between $215 and $330 per hour, with an average of approximately $284 per hour, and paralegal time billed at $135 per hour); Yurman Designs, 125 F. Supp. at 58 (approving average billing rate of $520.69 per hour for partners, $278 per hour for associates, and $162 per hour for paralegals), aff'd, 29 Fed. App'x 46 (2d Cir. 2002).

Plaintiffs's counsel indicates that in calculating the requested attorneys' fees, they have "removed entries from the bills that relate specifically to parties who had settled" and with the exception of fees directly attributable to work performed concerning each remaining defendant, the total attorney's fees and costs incurred by defendants have been divided equally among them. Kaplan Decl. ¶ 17 (Razzle Defendants), ¶ 28 (All In One Defendants) and ¶ 18 (D&L Defendants). Time spent preparing plaintiffs' case against other defendants in addition to the defaulting defendants should be

apportioned equally between all the defendants. See <u>Arclightz</u>
<u>and Films Pvt., Ltd. et al. v Video Palace, Inc. et al.</u>, 303
F.Supp.2d 356 (S.D.N.Y., 2003). The equal apportionment of fees
among the defendants is thus proper.

Plaintiffs' seek $729.00 in costs. Reasonable and
identifiable out-of-pocket disbursements ordinarily charged to
clients are recoverable. See <u>LeBlanc-Sternberg v. Fletcher</u>, 143
F.3d 748, 763 (2d Cir. 1998). Plaintiffs' request for court
filing fees and transcription services are recoverable litigation
costs. See <u>Aiello v. Town of Brookhaven</u>, No. 94-CV-2622, 2005 WL
1397202, at *8 (E.D.N.Y. June 13, 2005) (awarding transcription
fees); <u>New Leadership Comm. v. Davidson</u>, 23 F. Supp. 2d 301, 305
(E.D.N.Y. 1998) (awarding filing fee). Accordingly, I recommend
awarding plaintiffs the full amount of costs requested.


<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that
plaintiffs be awarded damages against the defendants as follows:
(1) $50,000 in statutory damages, $2,817.00 in attorneys' fees
and $243.00 in costs from defendants Razzle Kidazzle Inc. and
Linda Lippo, jointly and severally; (2) $50,000 in statutory
damages, $4,314.00 in attorneys' fees and $243.00 in costs from
All in One Entertainment Inc. and John R. Albuja, jointly and
severally; and (3) $75,000 in statutory damages, $2,366.00 in
attorneys' fees and $243.00 in costs from D&L Amusement and
Entertainment, Inc.

I further recommend that the Court issue a permanent injunction prohibiting defendants from: (a) purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-size costumes depicting the Barney®, Baby Bop®, BJ®, and Bob the Builder® characters for children's entertainment services or otherwise; (b) using Plaintiffs' copyrights, trademarks, service marks, logos and trade dress, or any copy, counterfeit or imitation of any of them in any manner, including, but not limited to advertising, promoting, and/or marketing children's entertainment services; and (c) committing or inducing others to commit any other infringing acts calculated to cause purchasers to believe that Defendants' adult-size costumes are Plaintiffs' genuine products.

A copy of this report and recommendation will be sent by overnight mail or electronically to the parties on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Sterling Johnson and the undersigned, by March 19, 2010. Failure to file objections within the time specified waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:    Brooklyn, New York
          March 2, 2010

_____/s/_____
MARILYN D.  Go
UNITED STATES MAGISTRATE JUDGE

<u>Copies sent to</u>:

Toby M.J. Butterfield
Matthew A. Kaplan
COWAN, DEBAETS, ABRAHAMS & SHEPPARD, LLP
41 Madison Avenue, 34th Floor
New York, Ny 10010

Linda Lippo and Razzle Kidazzle, Inc.
100 Shotwell Ave.
Staten Island, NY 10312

Christina Tedesco and D&L Amusement & Entertainment, Inc.
3121 Quentin Rd.
Brooklyn, NY 11234

All In One Entertainment, Inc. & John R. Albuja
8816 Jamaica Ave.
Jamaica, NY 11421